UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| CHARLES MANLEY, ) | 3:07-CV-00374-LRH-VPC |
| Plaintiff, ) |  |
| vs. ) | **REPORT AND RECOMMENDATION** |
|  ) | **OF U.S. MAGISTRATE JUDGE** |
| NEVADA DEPARTMENT OF ) |  |
| CORRECTIONS, *et al*., ) | June 1, 2009 |
| Defendants. ) |  |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#82). Plaintiff opposed (#104) and defendants replied (#105). The court has thoroughly reviewed the record and defendants' motion and recommends that defendants' motion (#82) be granted.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Charles Manley ("plaintiff"), acting in *pro se*, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#s 9, 97). Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Eighth Amendment right against cruel and unusual punishment while incarcerated at Lovelock Correctional Center ("LCC") (#9, p. 9). Plaintiff also alleges state tort claims.[1] *Id*. at 11. Plaintiff names as defendants NDOC; Dr. Bruce Bannister, medical director at LCC; Dr. John Scott, a prison medical doctor at LCC; and Don Poag, director of nursing at LCC. *Id.* at 2.

Plaintiff's complaint alleges three counts of deliberate indifference to his medical needs in violation of the Eighth Amendment, and two counts of medical malpractice. *Id.* at 9-11. In counts

---

[1] Although plaintiff specifically pled negligence in his complaint, his allegations form a cause of action for medical malpractice pursuant to Nev.Rev.Stat. § 41A.009 (#9, p. 12).

1, 2, 3, 4, and 5, plaintiff alleges defendants denied him a variety of treatments that would have significantly alleviated his pain from August 26, 2006, until approximately March 29, 2007. *Id.* at 3-9.

### B.     Factual Background

During his incarceration at LCC, plaintiff suffered from a medical condition which caused him severe pain throughout his back and extremities (#9).   Plaintiff's medical records reveal he suffered from back and spinal pain on March 10, 2005, during his intake into the NDOC prison system (#82, DEF, p. 5). The source of plaintiff's condition and pain is most likely linked to a bullet lodged in his spine. *See* #104, p. 104 (Plaintiff claims he has been having back problems ever since he suffered a gunshot wound in 1989). On August 26, 2006, plaintiff first kited the medical staff at LCC about his medical condition and pain after he aggravated a preexisting injury by doing sit-ups. (#82, p. 3, DEF, pp. 122, 187). The nursing staff and Dr. Scott treated him approximately two weeks later on September 9, 2006, and prescribed plaintiff Flexeril and Ibuprofen (#82, p. 3, DEF, p. 187). Plaintiff sent a second kite on September 23, 2006; however, this kite pertained to upper back pain caused by plaintiff's cellmate "wrenching" his neck (#82, p. 3, DEF, p. 116).   Thereafter, on September 25, 2006, defendant Scott saw plaintiff and prescribed him Ibuprofen and a range of motion exercise plan to relieve plaintiff's pain (#82, p. 3, DEF, p. 186).

On October 1, 2006, plaintiff sent a third kite and stated that he was experiencing pain in his right shoulder (#82, DEF, p. 115). Defendant Scott saw plaintiff two days later and opined that plaintiff might have cervical radulopathy or a simple muscle spasm (#82, p. 3, DEF, p. 185) and ordered him Baclofen and x-rays of the cervical spine (#82, DEF, p. 211). On October 14, 2006, plaintiff sent a fourth kite, stating that he had pain in his right shoulder and arm (#82, p. 4, DEF, p. 112). In response, defendant Scott did not see plaintiff personally. However, he reviewed plaintiff's x-rays, determined plaintiff had spondylosis at the cervical spine, and prescribed him Baclofen, Flexeril, and Elavil on October 17, 2006 (#82, p. 4, DEF, pp. 185, 211).

Despite this medication, plaintiff still experienced pain in his back and extremities (#82, p. 4, DEF, pp. 110,111). After plaintiff submitted two more kites on November 3 and 9, 2006, which again related to his neck, back, and shoulder pain, defendant Scott saw plaintiff on November 13,

2

1    2006 (#82, p. 4, DEF, pp. 110, 111, 184). Although plaintiff said he was experiencing extreme pain,
2    defendant Scott noted that plaintiff "ambulate[d] with a steady gait" and moved his extremities well
3    (#82, p. 4, DEF, p. 184). Defendant Scott decided to increase plaintiff's dosage of the prescription
4    drug Elavil and advised plaintiff to wait two to three weeks to see if it would help alleviate plaintiff's
5    pain. *Id.* After six days, however, plaintiff discontinued the Elavil, as he suffered adverse side
6    effects (#82, p. 4, DEF, pp. 107, 183). Thereafter, during an appointment with defendant Scott on
7    December 4, 2006, plaintiff expressed he no longer wanted the Elavil medication and urged he
8    needed different treatment, including a back brace[2] (#82, p. 4, DEF, pp. 183, 98, 93).

9          Over the next two months, plaintiff did not submit further kites about his back pain. Plaintiff
10   claims during this time period he did not kite defendant Scott about his back pain because he was
11   frustrated with the care defendant Scott provided and tried to remedy the problem through the
12   grievance process (#104, p. 10). Indeed, plaintiff did file his first grievance on December 6, 2006
13   (#82, DEF, p. 312), which he formally appealed on January 7, 2007, and again on January 23, 2007
14   (#82, DEF, pp. 318-22, 311-14).   Then, on March 10, 2007, plaintiff kited defendant Scott stating
15   that he wanted surgery for his back condition (#82, DEF, p. 78). At plaintiff's appointment,
16   defendant Scott noted that plaintiff still ambulated with a steady gait and did not seem pained when
17   getting in and out of his chair (#82, DEF, p. 178). Defendant Scott then ordered another x-ray, this
18   time focusing on plaintiff's lumbosacral spine. *Id.* Thereafter, on March 29, 2007, defendant Scott
19   reviewed the x-ray and noted the bullet lodged in plaintiff's vertebral body, but also noted no clinical
20   or x-ray indications for surgery, and that plaintiff did not appear disabled (#82, DEF, p. 177).
21   Finally, defendant Scott informed plaintiff that he had exhausted his treatment options at LCC for
22   this condition and stated that "there really [was not] anything else to do." *Id.*

---

[2] Plaintiff alleges that NDOC transportation staff confiscated his back brace for security purposes when he was transferred to LCC and that he asked for another back brace in September of 2006 during his appointment with defendant Scott (#9, p. 4). Plaintiff also filed a grievance that defendant Scott would not provide him with a back brace (among other treatments) on December 6, 2006, and in response, NDOC advised him to kite Dr. Scott specifically for the back brace (#82, DEF, p. 312). Thereafter, plaintiff kited on December 23, 2007 and January 2, 2007, asking for a back brace to relieve his pain (#82, DEF, pp. 98, 93). NDOC medical staff did not respond to either kite. Plaintiff then appealed his grievance on both levels and NDOC reiterated that he needed to kite for a back brace (#82, DEF, p. 312). Defendant Scott eventually provided plaintiff with a back brace on November 29, 2007, in an effort to ease plaintiff's pain while working in the culinary (#82, DEF, p. 174).

The court notes that plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim-Panahani v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.     Discussion**

**1.     Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.     Eighth Amendment Analysis**

    **1.     Deliberate Indifference to Serious Medical Need**

A prison official violates the Eighth Amendment when he acts with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard – that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard – deliberate indifference. *Id*. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).

The objective standard, a "serious medical need," is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.* To prove deliberate indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not violate the Eighth Amendment simply because

5

their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

### a.   Objective Standard: Serious Medical Need

Plaintiff argues that his chronic back and spinal pain constitutes a serious medical need during his stay at LCC and meets the objective standard for deliberate indifference. *See generally* #9. The defendants concede that plaintiff's back condition constitutes a serious medical need. *See* #82, p. 14. Furthermore, the evidence demonstrates that plaintiff's back condition is "serious" because plaintiff suffers from chronic and substantial pain and his condition appears to "significantly" affect plaintiff's daily activities. *Lopez*, 203 F.3d at 1131; *see generally* #82, DEF, pp. 23-322.

### b.   Subjective Standard: Deliberate Indifference

The central issue in this case is whether defendants denied plaintiff treatment for his back and spinal condition and were thus deliberately indifferent to plaintiff's serious medical needs. Defendants argue that there is no claim for deliberate indifference because plaintiff's medical records evidence a "nearly one-to-one correspondence of medical visits to medical kites" and that over the entirety of the visits, defendant Scott provided plaintiff a panoply of medical treatments (#82, p. 15). Plaintiff contends that he did not receive "requested medical treatment for his chronic and worsening spinal condition on October 3, 2006, December 4, 2006, December 23, 2006, January 2, 2006, January 4, 2007, January 5, 2007, March 22, 2007, and March 29, 2007" (#104, p. 9).

Plaintiff's medical records and history reveal that defendant Scott indeed saw plaintiff on numerous occasions and provided adequate treatment for his condition. From the time plaintiff submitted his first kite on August 26, 2006, to the time plaintiff filed his complaint on April 16, 2007, defendant Scott saw plaintiff seven different times for his back pain and tried to pinpoint and treat the source of plaintiff's condition. *See supra*, Part I. In an attempt to ease plaintiff's pain and treat his condition during this time period, defendant Scott examined plaintiff, ordered and reviewed x-rays to identify any skeletal problems, and he prescribed numerous drugs. *See supra*, Part I. The

1  appointments, x-rays, diagnoses, and prescription orders demonstrate that defendants did not deny
2  plaintiff medical treatment for his condition.

3  Plaintiff argues that at his appointment with defendant Scott on November 13, 2006, he
4  informed defendant that he suffered side effects from the prescription drug Elavil and could not
5  continue taking the drug (#104, p. 11). *See also* #82, DEF, p. 107, 98 (Plaintiff stated he needed
6  different medication because Elavil caused nausea, dizziness, and fatigue). Plaintiff urges that
7  defendant Scott was deliberately indifferent to his serious medical need because, despite these side
8  effects, defendant Scott later increased his dosage of Elavil. *See* #82, DEF, p. 184. Second,
9  defendant Scott prescribed plaintiff Baclofen and a medrol dose pack on October 3, 2006, both of
10 which, according to plaintiff, effectively relieved his pain (#82, DEF, p. 211; #104, p. 9). *But see*
11 #82, p. 23 (Plaintiff states that Baclofen helps his back condition very little). Plaintiff argues,
12 however, that defendant Scott was deliberately indifferent because plaintiff never received more than
13 a two-week supply of the Baclofen (#82, DEF, p. 30) and no more than one-week supply of the
14 medrol dose pack (#82, DEF, pp. 318-319).

15 Even if plaintiff's prescriptions were improper or not renewed, these errors did not worsen
16 his back condition, and defendant Scott continued to treat plaintiff through prescription drugs and
17 physical therapy. Furthermore, plaintiff cannot accuse defendants of deliberate indifference simply
18 because he does not agree with the treatment defendants provided. *See Franklin*, 662 F.2d at 1344.
19 At most, plaintiff's arguments may amount to a claim for negligence or medical malpractice, but they
20 do not state a claim for deliberate indifference. "In the medical context, an inadvertent failure to
21 provide adequate medical care cannot be said to constitute an unnecessary or wanton infliction of
22 pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been
23 negligent does not state a valid claim of medical mistreatment under the Eighth Amendment."
24 *Estelle*, 429 U.S. at 105-06. Medical malpractice does not become a constitutional violation merely
25 because the plaintiff is a prisoner. *Id.* at 106.

26 Plaintiff also claims deliberate indifference because defendants did not provide him with a
27 back brace and an extra mattress from the time of his intake at LCC (August 26, 2006) until months
28

7

after he filed his complaint. (#104, p. 13; #82, DEF, p. 174). The evidence actually shows that, after defendant Scott did prescribe plaintiff with a back brace on November 28, 2007, plaintiff exhibited the exact same symptoms as he did upon his arrival at LLC in September 2006. *Compare* #82, DEF, pp. 116, 115, 111 (plaintiff submitted kites about "extreme back pain" and pain in his shoulder and neck weeks after he arrived at LCC in September-November of 2006) *with* #82, DEF, p. 35 (plaintiff kited about experiencing extreme pain in back, shoulders, and neck two months after receiving the brace, and stated that the back brace only "helps a little" in February 2008). The case law in the Ninth Circuit reveals that this claim does not meet the standard for deliberate indifference.[3] Plaintiff has provided no evidence that his lack of a back brace worsened his condition, no indication that he followed the required NDOC procedure to acquire another mattress, and offers no medical evidence that a back brace is a necessity to treat his condition.

As for plaintiff's claim that he needed an extra mattress, defendant Poag informed plaintiff that it was not the medical staff's duty to provide him with one. Defendant Poag specifically stated plaintiff needed to request a new mattress from the laundry or petition the NDOC Utilization Review Committee for another mattress in accordance with NDOC policy (#82, DEF, p. 317). In his opposition, plaintiff does not state whether he tried either of these options, and if he did, whether the NDOC Utilization Review Committee needed a letter from defendant Scott authenticating the request.

Plaintiff also claims he also should have received an MRI for a more thorough examination of his back and corrective surgery to remedy the condition (#9, p. 7). The evidence reveals plaintiff

---

[3] In *Wood v. Housewright*, 900 F. 2d 1332, 1334 (9th Cir. 1990), medical staff gave Wood a sling to hold pins in his shoulder after surgery. Upon transfer, prison guards confiscated the sling for security reasons, much like guards confiscated plaintiff's back brace here. Due to the absence of the sling, one of the pins in the prisoner's shoulder dislodged, causing him intense pain. The prisoner brought suit, alleging the medical staff did not recognize the dislodged pin and denied him adequate medical care. On appeal, the Ninth Circuit held that prison medical staff still gave Wood some form of medical care during his incarceration that addressed his condition; thus, Wood had no cause of action under the Eighth Amendment. The court stated, "while poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, *or even gross negligence*, does not suffice." *Id.* (emphasis added). *See also Brooks v. Alameida*, 03-2343, Westlaw, (E.D. Cal. Feb. 10, 2009) (Medical staff deprived a prisoner, who suffered similar symptoms and pains as plaintiff, of his back brace and extra mattress. The court held the prisoner could not make out a deliberate indifference claim because his condition did not indicate a need for these items and the medical staff provided other treatment).

1  *did* have an MRI in 1993 during his incarceration in the Colorado Department of Corrections for the
2  same symptoms he experienced right before and after he filed his complaint against defendants in
3  2007. *Compare* #104, p. 85 (plaintiff complains in 1993 of problems lifting, long term standing,
4  muscle spasms in back, pain shooting down buttocks and leg) *with* #9, p. 4 (plaintiff complains in
5  2007 of pain from prolonged standing or sitting, sharp pain along buttocks and leg, and back and
6  spinal pain). Moreover, plaintiff's MRI in 1993 showed no pressure on the nerve roots in his spine
7  and, in the opinion of orthopedist, Jacob Patterson, plaintiff was *not* a candidate for surgery (#104,
8  p. 87). A doctor's decision not to order a particular test or procedure is a matter of medical
9  judgment, and a denial of that test does not constitute cruel and unusual punishment. *See Estelle*,
10 429 U.S. at 107 (a medical decision not to order an X-ray, *or like measures*, does not represent cruel
11 and unusual punishment) (emphasis added); *see also Salcido v. Zarek*, 237 Fed.Appx. 151, 152 (9th
12 Cir. 2007) (disagreement between inmate-patient and medical staff over whether surgical operation
13 is warranted for an inmate does not state a deliberate indifference claim).

14       The court has reviewed plaintiff's medical records and concludes that defendants treated
15 plaintiff in a timely and adequate manner for his back condition. The medical records also
16 demonstrate that defendants treated plaintiff in a timely and adequate manner for other serious
17 ailments as well. Plaintiff submitted nearly fifty kites to LCC medical officials. Several of those
18 kites pertain to other medical afflictions plaintiff suffered during his stay at LCC. For example,
19 plaintiff slipped and injured his hand on approximately January 1, 2007 (#82, DEF, p. 94).
20 Defendant Scott treated plaintiff for this injury on several occasions through x-rays, a splint for
21 plaintiff's hand, and medication. *See, e.g.,* #82, p. 5, DEF, pp. 182, 209, 180. Plaintiff also suffers
22 from hepatitis C and a liver condition, which defendant Scott treated with medication and lab work.
23 *See, e.g.,* #82, DEF, pp. 182, 180. Defendant Scott also treated plaintiff for the flu (#82, DEF, p. 79).
24 Although these records do not pertain specifically to plaintiff's back and spinal condition, they
25 evidence that defendant Scott was not deliberately indifferent to any of plaintiff's medical needs and
26 treated plaintiff whenever he kited about experiencing pain, anxiety, or illness during his time at
27 LCC. There is no indication that defendants denied plaintiff treatment for his back condition or
28

9

were deliberately indifferent to plaintiff's serious medical need. As such, there is no issue of material fact and defendants' motion for summary judgment (#82) is granted as to plaintiff's Eighth Amendment claims.

### C. Counts 4 and 5: State Tort Claims

Counts 4 and 5 are state tort claims. The court has granted defendants' motion for summary judgment as to all claims that plaintiff's constitutional rights were violated. Therefore, the court no longer has jurisdiction over any supplemental state claims. As such, defendants' motion for summary judgment is granted as to counts 4 and 5.

### III. CONCLUSION

Based on the foregoing reasons, the court concludes that, by failing to establish that defendants were deliberately indifferent to his serious medical need, plaintiff cannot withstand summary judgment on his Eighth Amendment claim. The court has no jurisdiction over plaintiff's supplemental state tort claims. Therefore, the court recommends defendants' motion for summary judgment (#82) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///
///
///

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#82) be **GRANTED**.

DATED:  August 10, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**